28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jennifer McWHIRT, by and through her parents and next
friends, Mr. and Mrs. James McWHIRT, Plaintiff-Appellant,
v.
WILLIAMSON COUNTY SCHOOLS, Defendant-Appellee.
 No. 93-5783.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1994.
 
 Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; RUBIN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs, parents of Jennifer McWhirt, appeal the defendant school district's recommended placement of their daughter in a comprehensive development classroom. An administrative law judge approved the placement after a hearing on the matter, and the district court affirmed, finding that defendant Williamson County Schools complied with the procedural requirements of the Individuals with Disabilities Education Act (the "Act"), 20 U.S.C. Sec. 1400 et seq., and that the Individualized Education Program ("IEP") developed by defendant placed plaintiff in the least restrictive environment to the "maximum extent appropriate" in accordance with 20 U.S.C. Sec. 1412(5)(B). We AFFIRM.
 
 I.
 
 2
 Jennifer McWhirt is diabetic, has neurological-based problems and limited verbal skills and ambulation. Before Jennifer enrolled in the fourth grade at Williamson County School System, in November 1991, she attended public school in Murfreesboro. While Jennifer attended school in Murfreesboro, she participated in resource classes (classes that offer extra help in a subject) for several hours a day and regular classes for the remainder. The records from Murfreesboro consistently indicate that Jennifer worked on grade level in some areas and a year or two behind in others.
 
 
 3
 Before Jennifer left the Murfreesboro System, personnel from the Williamson County School System observed Jennifer at Murfreesboro, examined Jennifer's school records and spoke with Jennifer's mother about appropriate placement. Consequently, Williamson County Schools placed Jennifer in a resource classroom at Crockett Elementary School. Jennifer's teacher at Crockett, Whitney Burnett, observed that Jennifer could not do fourth grade work and that the resource setting was not meeting Jennifer's needs. Consequently, she suggested alternative placement and the defendant held a meeting to consider her suggestion. The decision to place Jennifer in a comprehensive development classroom at Grassland Elementary School involved the following school personnel: Burnett, her aide, the speech and language pathologist, an independent speech pathologist, the principal of Crockett, and a neuro-psychologist.
 
 
 4
 Jennifer's parents disagreed with the proposed placement, maintaining that classmates with physical and mental disabilities more limiting than Jennifer's would not be good role models for her. In addition, the McWhirts believed that the distance from their home to Grassland created a problem because Jennifer's blood sugar needed to be tested daily and her verbal limitations made diagnosis and correction difficult. Therefore, they requested and received a due process hearing. See 20 U.S.C. Sec. 1415(c) (1990).
 
 II.
 
 5
 The Individuals with Disabilities Education Act assures all children with disabilities that "free appropriate public education which emphasizes special education and related services designed to meet their unique needs" will be available. 20 U.S.C. Sec. 1400(c). The Supreme Court first construed the Act in Board of Educ. v. Rowley, 458 U.S. 176, 200 (1982), holding that "free appropriate public education" requires that "some education benefit" must be provided to "handicapped" children. The Court acknowledged that determination of when children with disabilities received sufficient educational benefit to satisfy the requirements of the Act posed a difficult problem. Id. The Court also acknowledged that this determination must take into consideration the congressional preference for "mainstreaming."[1] Id.
 
 
 6
 The role of the court in reviewing compliance with the Act is limited to determining whether the decision is based on the "preponderance of the evidence" through a review of the records of the administrative proceedings. Id. at 206. Because the substantive requirements under the Act are not as well defined as the procedural requirements for the preparation of an IEP,[2] the court limits its inquiry to whether the state complied with the procedural requirements of the Act, and whether the IEP developed is "reasonably calculated to enable the child to receive educational benefits?" Id. at 206-07.
 
 III.
 Procedural Compliance
 
 7
 States must comply with the procedural safeguards of the Act. 34 C.F.R. Sec. 300.531 sets forth preplacement evaluation requirements and provides that, before a child is placed in a special educational program, "a full and individual evaluation of the child's educational needs must be conducted in accordance with the requirements of Sec. 330.532." The evaluation procedure specified in Sec. 330.532 requires testing, evaluation by a multidisciplinary team and assessment of all areas related to the disability.[3] The regulations also provide that, when interpreting the data resulting from the evaluation procedures, consideration must be given to a variety of sources including test results, teacher evaluations, physical condition and adaptive behavior. 34 C.F.R. Sec. 300.533. The Sixth Circuit requires strict compliance with the evaluation procedures of the Act. Baab v. Knox County Sch. Sys., 965 F.2d 104 (6th Cir.), cert. denied, 113 S.Ct. 380 (1992) (holding school district's failure to fully examine academic, emotional, and psychological profile constituted procedural violation).
 
 A. Past Academic Success
 
 8
 Plaintiffs contend that the defendant school system violated the regulations because it ignored the extensive history from Murfreesboro system and based its evaluation of Jennifer's academic performance on the short time that she attended Crockett. Plaintiffs argue that defendant should have consulted with the Murfreesboro school to determine why Jennifer's performance dropped so dramatically, and conclude that the existence of conflicting views between the school systems and defendant's failure to resolve the conflict shows that it did not adequately consider Jennifer's educational history.
 
 
 9
 The record shows that defendant initially placed Jennifer in a regular classroom setting, with additional resource classes, because of her past academic record and her mother's recommendation. It did not ignore this information. After Burnett observed Jennifer's scholastic difficulty and the extent of her difficulty walking and communicating, defendant reevaluated Jennifer in all areas related to her disability.
 
 
 10
 At the hearing before the administrative law judge, all school personnel testified that Jennifer's current placement in the resource classroom was not meeting her educational and physical needs. Defendant maintained that the Grassland special education teacher, Peggy Bryant, a teacher with experience educating nonverbal students and coordinating their learning with various augmentative communication devices, could better meet Jennifer's educational needs.
 
 
 11
 The lower court correctly refused to substitute the plaintiffs' notions of sound educational policy for those of the school system. See Rowley, 458 U.S. at 206. Past academic success is but one factor to be considered under the regulations. See 34 C.F.R. Sec. 330.532(3)(F). The status of Jennifer's health, social and emotional development in conjunction with her deficient communicative skills and motor abilities all contributed to defendant's assessment that Jennifer was unable to function in a regular classroom. This court refuses to elevate Jennifer's past academic history above all other factors or to ignore the defendant's obligation to modify and adjust the IEP as needed. See 34 C.F.R. Sec. 303.342(b)(ii).
 
 B. Physical and Health Considerations
 
 12
 Plaintiffs also assert that defendant violated the procedural regulations by failing to evaluate Jennifer's health (34 C.F.R. Sec. 300.532(f)), failing to consider information about her physical condition in making placement decisions (34 C.F.R. Sec. 300.532(a)), failing to place her as close as possible to her home (34 C.F.R. Sec. 300.552(a)(3)), and, failing to consider any potential harmful effect on the child (34 C.F.R. Sec. 300.552(d)).
 
 
 13
 The lower court's finding is supported by the record, which shows that defendant considered Jennifer's physical condition. Jennifer had difficulty communicating verbally and needed an augmentative communication device. Defendant acknowledged that this device could be proved at Crockett; however, Jennifer's communication difficulties were not the only reason for the proposed Grassland placement.
 
 
 14
 As for Jennifer's health, the teacher at Grassland testified that she has been trained to perform various procedures on children with multiple disabilities and was willing to learn any procedure necessary for Jennifer's health. Although Jennifer's mother believes that she is the only person capable of handling Jennifer's diabetic condition, there is no reason to believe that the Grassland personnel could not be trained to care for her. The record shows that defendant has identified and planned for medical problems in a satisfactory manner.
 
 
 15
 Although plaintiffs insist that Jennifer must be placed as close as possible to her home, an objective reading of the comment to 34 C.F.R. Sec. 300.552 supports the conclusion that the educational needs of the child, not the distance of the school to the home, are determinative of placement. Defendant believes that Grassland Elementary is the closest school that can adequately care for Jennifer and meet her educational needs. Defendant presented sufficient evidence at the administrative proceeding to support this decision.
 
 IV.
 
 16
 The Act requires children with disabilities to be educated with children without disabilities whenever possible. Rowley, 458 U.S. at 203. The courts recognize that this is not always practical; see DeVries v. Fairfax County Sch. Bd., 882 F.2d 876 (4th Cir.1989) (holding autistic child could not be accommodated at nearest high school even with supplementary aids and services this placement in vocational center comported with Act); Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036 (5th Cir.1989); Briggs v. Board of Educ., 882 F.2d 688 (2d Cir.1989) (presumption of mainstreaming may be outweighed by importance of providing an appropriate education); Lachman v. Illinois State Bd. of Educ., 852 F.2d 290 (7th Cir.), cert. denied, 488 U.S. 925 (1988).
 
 
 17
 A school district must examine the educational benefits, both academic and nonacademic, available to a child with a disability in a regular classroom. The record shows that defendant did so with regard to Jennifer, and there is no reason to dispute defendant's conclusion that Crockett School was not able to provide appropriate services. Jennifer's IEP requires mainstreaming for classes in art, music, and science or social studies, and that Jennifer will eat lunch and recess with nondisabled children. This has been determined by the defendant to be the "maximum extent appropriate" and that determination is supported by the record.
 
 
 18
 Accordingly, we AFFIRM.
 
 
 
 *
 The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Under 20 U.S.C. Sec. 1412(5)(B), states are required to establish procedures designed to assure, "to the maximum extent possible" that children with disabilities are educated with children who are not disabled
 
 
 [2]
 The IEP includes a statement of present levels of education performance, annual goals and short-term instructional objectives; special services to be provided and extent of participation in regular educational programs. 34 C.F.R. Sec. 300.346
 
 
 [3]
 "State educational agencies ... shall ensure, at a minimum, that:
 (a) Tests and other evaluation materials--
 (1) Are provided and administered in the child's native language or other mode of communication, unless it is clearly not feasible to do so;
 (2) Have been validated for the specific purpose for which they are used; and
 (3) Are administered by trained personnel in conformance with the instructions provided by their producer.
 (b) Tests and other evaluation materials include those tailored to assess specific areas of educational need and not merely those that are designed to provide a single general intelligence quotient.
 (c) Tests are selected and administered so as best to ensure that when a test is administered to a child with impaired sensory, manual, or speaking skills, the test results accurately reflect the child's aptitude or achievement level or whatever other factors the test purports to measure, rather than reflecting the child's impaired sensory, manual, or speaking skills (except where those skills are the factors that the test purports to measure).
 (d) No single procedure is used as the sole criterion for determining an appropriate educational program for a child.
 (e) The evaluation is made by a multidisciplinary team or group of persons, including at least one teacher or other specialist with knowledge in the area of suspected disability.
 (f) The child is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities."
 
 
 [34]
 C.F.R. Sec. 300.532