**Timothy TILTON, by his Guardian and Next Friend, Mona RICHARDS, et al.,
Plaintiffs-Appellants,**

v.

**JEFFERSON COUNTY BOARD OF EDUCATION, et al.,
Defendants-Appellees.**

No. 81–5449.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 31, 1982.

Decided April 19, 1983.

Rehearing and Rehearing En Banc Denied Aug. 1, 1983.

Judith Davis (argued), Lloyd Anderson, Richard W. McHugh, Legal Aid Soc., Inc., Louisville, Ky., for plaintiffs-appellants.

Robert Cusick, Jr., Louisville, Ky., Paul F. Fauri, Martin Kasdan, Jr. (argued), Dept. for Human Resources, Frankfort, Ky., Steven L. Beshear, Atty. Gen. of Ky., Robert L. Chenoweth, Deputy Atty. Gen., Frankfort, Ky., Francis J. Mellen, Jr. (argued), Kevin J. Hable, Wyatt, Tarrant & Combs, Louisville, Ky., for defendants-appellees.

Before KENNEDY and KRUPANSKY, Circuit Judges and RUBIN, District Judge.*

CARL B. RUBIN, District Judge.

Plaintiffs, minors suing by their next friend, seek reversal of a District Court Order which denied a Motion for Preliminary Injunction. All plaintiffs are emotionally handicapped children who had received treatment and education at Jewel Manor, a day treatment facility, operated by the Kentucky Department of Human Resources ("DHR").

Jewel Manor provided the only 12-month day treatment program for seriously emotionally handicapped children available in the Jefferson County public schools. It featured a parental involvement and counseling program and a special education/therapy program coordinated by specially-trained teachers.

In May of 1981, DHR closed Jewel Manor for budgetary reasons. Plaintiff sought the Preliminary Injunction to compel the DHR, the Jefferson County Board of Education ("County Board") and the Kentucky Department of Education ("DOE") to continue the operations of Jewel Manor.

At issue herein is an interpretation of The Education for All Handicapped Children Act ("EHCA" or "the Act"), 20 U.S.C. § 1400 et seq. passed by Congress in 1975.[1] Plaintiffs-appellants assert that the termination of the program at Jewel Manor constituted a change in placement under the Act and, pursuant to § 1415(e)(3), the state was precluded from instituting this change during the pendency of proceedings contesting the propriety of its action. Consequently, appellants seek an order directing defendants to reopen Jewel Manor or, alternatively, provide services substantially similar to those previously available at Jewel Manor, until final resolution of their complaints under the Act.

* The Honorable Carl B. Rubin, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

## I.

The EHCA provides federal money to assist state and local agencies in educating handicapped children. Such funding is conditioned upon a compliance with specific procedures designed to assure "all handicapped children the right to a free, appropriate public education." 20 U.S.C. § 1412(1). Specifically, 20 U.S.C. § 1415 requires the states to adopt and maintain, inter alia, the following procedures:

(C) written prior notice to the parents or guardian of the child whenever such agency or unit—

(i) proposes to initiate or change, or

(ii) refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

(D) procedures designed to assure that the notice required by clause (C) fully inform the parents or guardian, in the parents' or guardian's native language, unless it clearly is not feasible to do so, of all procedures available pursuant to this section; and

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

1. Appellants have offered no basis to sustain their action under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 42 U.S.C. § 1983, or KRS §§ 157.200 to 157.305.

If the due process hearing is conducted by a local agency then the parent or guardian may appeal an adverse decision to the state agency. § 1415(c). Any party aggrieved by a final agency decision may initiate a civil action "with respect to the complaint presented." § 1415(e)(2). Finally, and most pertinent to the instant matter, subsection (e)(3) of § 1415 provides, in relevant part:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child.

## II.

Initially, defendants contend that the assignment of children to Jewel Manor was not an "educational placement" within the meaning of the Act. They argue that Jewel Manor was a treatment facility only, and therefore outside the scope of the Act. This argument is without merit.

The term "educational placement" is not defined in the Act; however, "free appropriate public education" is defined as "special education and related services" which meet certain requirements set out in the statute. 20 U.S.C. § 1401(18). "Special education" refers to "specially designed instruction ... to meet the unique needs of a handicapped child." 20 U.S.C. § 1401(16). "Related services" includes "such developmental, corrective, and other supportive services ... as may be required to assist a handicapped child to benefit from special education...." 20 U.S.C. § 1401(17).

In light of these definitions, defendants' attempt to characterize the program at Jewel Manor as "treatment," rather than "education," must fail. The concept of education under the Act clearly embodies both academic instruction and a broad range of associated services traditionally grouped under the general rubric of "treatment." Any attempt to distinguish academics from treatment when defining "educational placement" runs counter to the clear language of the Act. There can be no question

that plaintiffs' assignment to Jewel Manor was an educational placement within the meaning of the Act. *See, e.g., Kruelle v. New Castle County School District,* 642 F.2d 687, 693 (3rd Cir.1981) (holding that a residential placement is encompassed within the term "special education"). *See also, Tokarcik v. Forest Hills School District,* 665 F.2d 443 (3rd Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) (catheterization is a "related service"); *Tatro v. State of Texas,* 625 F.2d 557 (5th Cir.1980) (same).

Defendants next assert that, even if the Jewel Manor program was subject to the EHCA, the closing of the school and reassignment of the plaintiffs was not a change in placement. Defendants principally rely on *Concerned Parents & Citizens for the Continuing Education at Malcolm X. (PS79) v. New York City Board of Ed.,* 629 F.2d 751 (2nd Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981). In that case, one school, P.S. 79, was closed for budgetary reasons, and the 185 handicapped children enrolled there, out of a total enrollment of 310, were moved to different schools which did not provide the "extremely innovative educational program" available at P.S. 79. The District Court found this to be a change in educational placement under the Act. In reversing, the Second Circuit stated that "the term 'educational placement' refers only to the general type of educational program in which the child is placed." 629 F.2d at 753. The Court stated that the requirements of § 1415 would not be triggered by a decision to transfer the special educational classes from one school to another, even if the new programs varied somewhat from the old. *Id.* at 753–54. Special education refers to the general program and not variations within it. *Id.* The Court noted that the language of § 1415(b)(1)(C), *supra,* suggested that the requirements of § 1415 were limited to "certain fundamental decisions regarding ... the most appropriate type of educational program for assisting a child with ... a handicap." *Id.* The Court also stated that the applicable regulations sup-

ported this interpretation, and gave as an example of a fundamental change the transfer of a child from a special class in a regular school to a special school. *Id.* The Court noted that defining a change in placement to include any alterations in a program "would virtually cripple the Board's ability to implement even minor discretionary changes within the educational programs provided for its students" and would also inhibit the Board from introducing new activities or programs. *Id.* at 755. The Court, in concluding that no change in placement had occurred, stated, "More explicit statutory language is required to justify an interpretation that would so constrain the discretion of educational agencies...." *Id.*

■ The situation in the instant case is distinguishable. The evidence below tended to demonstrate that the programs at alternative schools are not comparable to the Jewel Manor program. Most significantly, all of the alternative placements were limited to 180-day programs whereas Jewel Manor provided year-round instruction. *See generally, Battle v. Commonwealth of Pennsylvania,* 629 F.2d 269 (3rd Cir.1980), cert. denied, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981) (inflexible 180-day rule precludes the proper formulation of appropriate education). Testimony indicated that summer instruction was a significant facet of the Jewel Manor program. Accordingly, we conclude that the closing of Jewel Manor and transfer of these plaintiffs was a change in placement under the EHCA.

■ It does not, however, necessarily follow that the District Court erred in refusing to enjoin the closing of Jewel Manor, even though, in the usual case, a change in placement cannot take place absent the procedural protections of § 1415, including the requirement imposed by § 1415(e)(3) that the child remain in his or her "current educational placement" during the pendency of any proceedings initiated pursuant to

§ 1415. *See Kaelin v. Grubbs,* 682 F.2d 595 (6th Cir.1982). The procedural protections of § 1415 are designed to provide for maximum participation by the parents or guardians of handicapped children in the decisions concerning placement of handicapped children.[2] These procedures were established as a result of a Congressional concern that children were suffering from erroneous identification and classification of handicapping impediments. *See,* S.Rep. No. 94–168, 94th Cong., 1st Sess. [1975], U.S.Code Cong. & Admin.News 1450–51. *See also, Concerned Parents, supra* at 754. Because of its belief that erroneous classifications were widespread, Congress determined that the interests of the handicapped child would best be served by imposing the status quo upon placement pending the resolution of any parental complaints prompted by a proposed change in placement. However, nothing in the legislative history or the language of the Act implies a legislative intent to permit interested parties to utilize the automatic injunctive procedure of § 1415(e)(3) to frustrate the fiscal policy of participating states.

It is well-settled that "[b]y and large, public education in our Nation is committed to the control of state and local authorities." *Epperson v. Arkansas,* 393 U.S. 97, 100, 89 S.Ct. 266, 268, 21 L.Ed.2d 228 (1968). These authorities do not, by electing to receive funds under the EHCA, abdicate their control of the fiscal decisions of their school systems. Stated in the alternative, Congress did not compel, as the price for federal participation in education for the handicapped, a wholesale transfer of authority over the allocation of educational resources from the duly elected or appointed state and local boards to the parents of individual handicapped children.

Clearly, however, applying the statutory injunction of § 1415(e)(3) to changes in placement occasioned solely by economic decisions would effect a transfer of power. The appellants could forestall implementa-

---

**2.** As the Supreme Court noted, this provision is part of the Congressional scheme to encourage parental involvement in the education of handi-

capped children. *Board of Education v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 3038 n. 6, 73 L.Ed.2d 690 (1982).

tion of a fiscal policy decision while pursuing complaints through the procedural framework of § 1415. The exhaustion of administrative remedies coupled with available judicial review contemplated by § 1415 could conceivably entail several years of protracted litigation. During this period, were the Court to accept appellants' position, the state would be obliged to finance a program it had determined to be unaffordable simply because concerned parents or guardians alleged deficiencies in substitute programs. Congress certainly never intended such a result.

Moreover, the appellants' position could undermine the statutory purpose of providing an appropriate education to *all* handicapped children. As indicated, the state could be obligated, against its reasoned judgment, to finance a program for some handicapped children because of the bare allegations of a single interested party. This forced spending might well deprive other handicapped children of needed resources.

Finally, our conclusion that § 1415(e)(3) cannot be invoked to foreclose a change in placement arising solely as a result of economic considerations does not necessarily leave appellants without an adequate remedy to contest the sufficiency of the new placements. Appellants may initiate complaints "with respect to any matter relating to the ... educational placement" of the children pursuant to § 1415(b)(1)(E) and they are insured due process regarding any complaints by virtue of § 1415(b)(2).

We are supported in our conclusion by the Supreme Court's recent decision in *Board of Education v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In *Rowley,* the Court indicated that, despite the broad range of services *permitted* under the Act's definition of "free appropriate public education," there are limits on what a state is *required* to provide. In rejecting the argument that the states were required to "maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children," the Court stated that Congress was primarily concerned with identifying and evaluating handicapped children and providing them with access to a free public education. At ——, 102 S.Ct. at 3048. The Court held that the requirement of a free appropriate education was satisfied by providing "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Id.* at ——, 102 S.Ct. at 3049. The Court went on to caution that courts must avoid imposing their views of preferable educational methods on the states, where responsibility, under the Act, for choosing the method most suitable to the child's needs was vested. *Id.* at ——, 102 S.Ct. at 3051.

We hold, then, that if a state or local agency must discontinue a program or close a facility for purely budgetary reasons, the requirements of 20 U.S.C. § 1415(e)(3) do not apply. The Judgment of the District Court is Affirmed.