Jason BABB, a minor, through his parents and next friends, Joe and Sharon Babb, Plaintiffs–Appellants,

v.

KNOX COUNTY SCHOOL SYSTEM, Defendant–Appellee.

No. 91–5500.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1992.

Decided May 29, 1992.

Dean Rivkin (argued and briefed), Knoxville, Tenn., Gary D. Buchanan (briefed), Brentwood, Tenn., Brenda McGee (briefed), Knoxville, Tenn., for plaintiffs-appellants.

Michael W. Moyers (argued and briefed), John E. Owings, Knox County Law Director's Office, Knoxville, Tenn., for defendant-appellee.

Before: KEITH and MARTIN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Joe and Sharon Babb, on behalf of their son Jason, appeal a determination that the Knox County, Tennessee school system has no responsibility for costs associated with time Jason spent in Peninsula Psychiatric Hospital. The Babbs argue that Jason was handicapped under the Education of the Handicapped Act, 20 U.S.C. §§ 1401–1461 (1991). They now seek reimbursement for the costs relating to Jason's stay at Peninsula, arguing that his stay was in keeping with the Act and necessary to provide Ja-

son with appropriate educational services. We agree and reverse the district court's judgment.

Jason Babb has a long history of abnormal behavior and academic failure. Born in 1975, Jason lived with his father and stepmother, the Babbs, until he was eight years old. From the ages eight to thirteen, Jason lived with his mother and stepfather in North Carolina. In November 1988, Jason returned to Knoxville, Tennessee, to again live with his father and stepmother.

Jason's history of trouble began early. At the age of four, he was expelled from pre-school for breaking a gerbil's leg and urinating on other children. At the age of five, he attempted to strangle a female classmate and to set the classroom Christmas tree on fire. During the next five years, Jason's behavior did not improve. He continued to have difficulty in school and the school eventually threatened to expel him for his behavioral problems. In addition to his problems at school, he also set a house on fire causing some nine hundred dollars in damage. He also broke his stepbrother's arm at least once during this period. Finally, in November 1988, Jason's mother and stepfather felt that they could no longer control Jason and they asked the Babbs to take him back.

The day after Jason returned to Knoxville, Mrs. Babb enrolled him in South Middle School, a Knox County public school. At that time, Mrs. Babb told both the school principal and school counselor of Jason's long history of behavioral and academic problems and requested that he be formally evaluated. In January 1989, the school counselor evaluated Jason and concluded that Jason was not seriously emotionally disturbed. The academic and psychological evaluations were limited, concentrating exclusively on Jason's three months at South Middle School. Following the evaluation, school officials met with Mrs. Babb and informed her that Jason was not eligible for special services under the Education for the Handicapped Act, 20 U.S.C. §§ 1400–1461. At that time, Mrs. Babb signed a statement agreeing with the determination that Jason was not eligible for the

special services. Mrs. Babb signed an additional statement acknowledging she had been fully apprised of the rights she and Jason possessed under the Act, including the right to independent evaluation and the right to object to or disagree with the school system's determination of Jason's status.

In mid-February 1989, just one week after receiving the results of Jason's evaluation, the Babbs learned for the first time that during the previous three months, the school had placed Jason on "in-school" suspension numerous times and that the school was planning to expel Jason. With this information, the Babbs removed Jason from the Knox County school system and placed him in Peninsula, a private hospital that contains a specially designed educational program for emotionally disturbed children. Jason remained at the hospital and attended classes there for three hours a day from February 21, 1989, until August 1, 1989. At the hospital, a clinical psychologist evaluated Jason and found that Jason was suffering from Conduct Disorder, Severe Solitary Aggressive Type, and Paranoid and Schizoid Traits.

Subsequent to placing Jason at Peninsula, the Babbs requested a due process hearing to determine whether Jason was emotionally handicapped and thus eligible for special educational services under the Education for the Handicapped Act. The Babbs also sought reimbursement for educational expenses associated with Jason's stay in Peninsula. On October 25, 1989, a hearing officer for the Tennessee State Department of Education found that the Babbs had placed Jason in Peninsula for non-educational, medical reasons and the Babbs' expenses were not covered under the Act. The hearing officer totally disregarded the fact that the school had been less than candid about Jason, and found that even if Jason had been placed in Peninsula for educational reasons, reimbursement was not appropriate because the Babbs had supplied only a lump-sum billing from Peninsula that included all of Jason's expenses, both medical and non-medical. The hearing officer made very few findings of fact and concluded that the Babbs had

the burden of establishing the amount of reimbursement for educational expenses. The hearing officer found that because there was insufficient proof of the appropriate expenses related to education, no award could be made.

The Babbs then challenged this decision in federal district court. The district court affirmed the findings of the administrative law judge, finding that the Babbs had failed to exhaust their administrative remedies. The court specifically found that the Babbs failed to seek a due process hearing challenging the school system's assessment that Jason was not entitled to special services under the Act. The court found that if the Babbs had pursued administrative remedies, less restrictive alternatives might have been arranged. Instead, because the Babbs acted unilaterally, placing Jason in a locked ward in a psychiatric hospital, Jason went from the least restrictive environment of a public school to the most restrictive setting possible. The court found that this change in Jason's circumstances was a clear contradiction of the express legislative purpose of the Act.

The district court further found that Jason was placed in Peninsula for primarily medical reasons and, therefore, expenses incurred at Peninsula related to Jason's education were not reimbursable. The court also found the Babbs had failed to submit a breakdown of expenses related to education, and even if the Babbs were entitled to reimbursement, the district court would be unable to set the appropriate amount.

The Babbs argue that (1) the district court erred by not determining that Jason was clearly emotionally handicapped and qualified for special services under the Act, (2) the Babbs complied with the administrative exhaustion requirements in a timely fashion, and (3) under the Supreme Court's test in *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Babbs' decision to place Jason in Peninsula was appropriate in light of his educational needs. The Babbs argue that for these reasons, they should be reimbursed for the costs associated with the placement.

The school system responds by arguing that (1) the district court correctly found that the Babbs' placed Jason in Peninsula primarily for medical reasons, (2) medical expenses are not reimbursable under the Act, (3) the school system properly found that Jason was not emotionally handicapped and thus did not qualify for special services, and (4) even if the Babbs did qualify for reimbursement, they failed to properly prove which expenses were educational.

■ One of the primary purposes of the Act is to provide handicapped children with a "free appropriate public education." 20 U.S.C. § 1412(1) (1991). *See Irving Independent School Dist. v. Tatro*, 468 U.S. 883, 891, 104 S.Ct. 3371, 3376, 82 L.Ed.2d 664 (1984). Children who are seriously emotionally disturbed are considered handicapped for purposes of the Act. *Clevenger v. Oak Ridge*, 744 F.2d 514, 515 (6th Cir. 1984). "Seriously emotionally disturbed" is defined at 34 C.F.R. § 300.5(b)(8):

(i) The term means a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree, which adversely affects educational performance:

(A) An inability to learn which cannot be explained by intellectual, sensory, or health factors;

(B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers;

(C) Inappropriate types of behavior or feelings under normal circumstances;

(D) A general pervasive mood of unhappiness or depression; or

(E) A tendency to develop physical symptoms or fears associated with personal or school problems.

(ii) The term includes children who are schizophrenic. The term does not include children who are socially maladjusted, unless it is determined that they are seriously emotionally disturbed.

We are convinced, after reviewing the district court's findings of fact and the record, that at the time Jason was enrolled as a

student in the Knox County school system and during his time at Peninsula, he was seriously emotionally disturbed under the provisions of the Act and therefore qualified as "handicapped" under the Act.

■ Even though standard intelligence quotient testing indicated that he has average to above-average intelligence, Jason Babb has a long history of academic failure that culminated during his three months in the Knox County school system. Testimony in the record indicates that Jason had difficulty making and maintaining friendships. This inability to create normal social bonds no doubt stems, in part, from tendencies that have resulted in physical abuse of siblings and classmates, torture of animals, and property theft and destruction. These outward manifestations are nothing less than road signs marking Jason's tragic mental decline. Psychiatrists diagnosed Jason as a person who was "decompensating into a thought disorder which seems to be increasing in severity as he grows older." Jason's psychiatrists stated that at age thirteen, Jason was suffering from a

> fairly severe degree of psychopathology.... [and] exhibit[ed] a highly ideational/schizoid personality style that is marked by underlying rage, paranoid misinterpretation of interpersonal situations, hyper vigilance, affective reactivity, impulsive acting out of unconscious issues, intense splitting, suspiciousness, and withdrawal into fantasy.

Because of their technical expertise, administrative agencies are traditionally better suited to make these types of determinations. In Jason's case, however, the agency failed to rule on the foundational issue of his condition. The evidence before us is convincing that at the time of the incidents that gave rise to this litigation, Jason Babb was seriously emotionally disturbed and thus, handicapped under the Act, qualifying for the Act's special protections and services.

■ With this determination, we turn to the question of whether the Babbs should be reimbursed for their expenditures arising from Jason's placement in Peninsula. The Act directs courts to "grant relief as necessary." *Burlington,* 471 U.S. at 369, 105 S.Ct. at 2002. Courts have broad discretion to fashion appropriate relief. *Id.*

In *Burlington,* the parent of a handicapped child rejected a school system's proposed individualized educational program for the child and pursued administrative due process remedies. At the same time and prior to the exhaustion of administrative remedies, the father enrolled the child in a state-approved, private school in order to meet the child's special educational needs. The father applied for reimbursement of the educational expenses in accordance with the Act. *Id.* at 361–364, 105 S.Ct. at 1998–99. The Supreme Court found that under 20 U.S.C. § 1415(e)(2), such reimbursement to parents for private school tuition and related expenses was appropriate. *Id.* at 369, 105 S.Ct. at 2002. Because exhaustion of administrative remedies and judicial review would be lengthy, retroactive reimbursement for educational expenses and related services may be awarded to parents who unilaterally choose to address a school system's ineffective educational plans by placing their child in a private program and thereafter pursuing remedies for such private placement.

Under *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), we are charged with considering (1) whether the State complied with the procedures set forth in the Act, and (2) whether the individualized education program developed through the Act's procedures was reasonably calculated to enable the child to realize the educational benefits as mandated by the Act. *Id.* at 206–207, 102 S.Ct. at 3050–51. Special emphasis is placed on strict adherence to the Act's procedures. *Id.* at 205, 102 S.Ct. at 3050. Two circuits have specifically held that the school's failure to comply with the Act's procedural requirements constitutes a per se violation of the Act. *See Jackson v. Franklin County School Bd.,* 806 F.2d 623, 629 (5th Cir.1986) ("[F]ailures to meet the Act's procedural requirements are 'adequate grounds by themselves' for holding that the school failed to provide a free and appropriate

education, as mandated by the Act."); *Hall by Hall v. Vance County Board of Education,* 774 F.2d 629, 635 (4th Cir.1985) (school failed to provide a "free appropriate public education" when school did not follow procedural requirements). *See also Hudson By and Through Tyree v. Wilson,* 828 F.2d 1059, 1063 (4th Cir.1987).

■ Applying the first part of *Rowley* to the Babbs' case, the school did not strictly adhere to the procedures for determining whether Jason was handicapped. The Act requires school systems that are determining whether a child is handicapped to fully examine the child's academic, emotional, and psychological profile. *See* 34 C.F.R. § 300.531 (school systems must "conduct a full and individual evaluation" of the student). 34 C.F.R. § 300.532(f) specifically requires school systems to assess a child "in all areas related to the suspected disability, including, where appropriate, health, ... social and emotional status, general intelligence, [and] academic performance."

Here, the school psychologist failed to examine Jason's complete academic, psychological and behavioral history when she concluded he was not handicapped. The school psychologist did not consult with Jason's psychologist, his mother and stepfather in North Carolina, nor Jason's father, Joe Babb. The school psychologist failed to consult Jason's academic record in North Carolina. This was his most recent history of academic failure. In making the evaluation, the school psychologist only considered Jason's three months in the Knox County school system.

Turning to the second part of *Rowley,* the school did not create an individualized educational program for Jason and did not meet Jason's specialized needs. Had the school properly complied with the Act's requirements by thoroughly examining Jason, the Babbs and the school system could have worked together to design a proper plan to best meet Jason's needs. The wisdom of hindsight in this instance, however, provides hollow comfort. We examine the Babbs' choice of placing Jason in Peninsula to determine whether it was the appropriate choice that best met Jason's educational needs. *See Burlington,* 471 U.S. at 369–370, 105 S.Ct. at 2002; 34 C.F.R. § 300.550–552 (requiring that a handicapped child should be placed in the least restrictive setting possible considering the child's individual situation).

The district court found that the Babbs' private placement of Jason was the most restrictive option and therefore, in conflict with the Act's intent of providing the best education in the least restrictive manner possible. We are faced, however, with two options: the school's choice of inaction, which would have ultimately resulted in Jason's expulsion, versus the Babbs' choice of a residential program with counseling and educational services, which resulted in Jason receiving much-needed psychological care combined with daily educational programming. When comparing these two options, the Babbs' choice best fulfilled Jason's special educational needs. Jason's obvious need for intensive psychological care and a structured educational program was best served by Peninsula.

The Knox School Board next argues that the Act specifically excludes reimbursement of expenditures arising from Jason's placement at Peninsula. The Act defines a free appropriate public education as "special education and related services." 20 U.S.C. § 1401(18). Special education is defined as "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including ... instruction in *hospitals and institutions.*" 20 U.S.C. § 1401(16) (emphasis added). The Act defines "related services" at 20 U.S.C. § 1401(17), as

transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, *psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only*) as may be required to assist a handicapped child to benefit from special education, and includes the early identifi-

cation and assessment of handicapping conditions in children. (emphasis added). The school system argues that any expenses associated with Jason's stay at Peninsula are excluded because Jason's placement was primarily medical. This is not what a common-sense reading of the Act conveys. The plain meaning of this statute requires educating emotionally handicapped children in "hospitals and institutions" when necessary to enable a handicapped child to obtain a "free appropriate public education." Further, the plain language of the Act specifically provides as part of a free appropriate public education the psychological and counseling services to which Jason was referred and which he received.

Twice before we have held that school systems are responsible for special educational costs arising from the placement of children in programs such as Peninsula. *See Clevenger v. Oak Ridge School Bd.*, 744 F.2d 514 (6th Cir.1984); *Tilton v. Jefferson County Bd. of Education*, 705 F.2d 800 (6th Cir.1983). In *Tilton*, this court rejected the school system's characterization of placement in a private residential program with a psychological counseling component as "treatment" rather than "education," and not reimbursable. *Tilton*, 705 F.2d at 803. We held:

> The concept of education under the Act clearly embodies both academic instruction and a broad range of associated services traditionally grouped under the general rubric of "treatment." Any attempt to distinguish academics from treatment when defining "educational placement" runs counter to the clear language of the Act.

*Id. See also Tatro*, 468 U.S. at 891, 104 S.Ct. at 3376. We have applied *Burlington* and held that where parents unilaterally place their handicapped children in facilities such as Peninsula and where we later find that decision to be appropriate, school systems must reimburse parents for costs that are related to education and special services arising from that placement. *Janzen v. Knox County Board of Education*, 790 F.2d 484, 486 (6th Cir.1986) (free appropriate public education includes instruction in hospitals and institutions and related support services such as psychological counseling).

In conclusion, it is plainly evident that Jason Babb is handicapped and is eligible for a free appropriate public education that includes psychological care and related services. The Knox County School System failed to adhere to the procedural requirements to determine whether Jason Babb was handicapped under the Act. As a direct consequence of this omission, Jason Babb was deprived of an individualized educational program to meet his special needs.

The district court's judgment is reversed and the case is remanded. In keeping with this opinion, the district court shall determine the expenses that are covered under the Act that are to be reimbursed to the Babbs. This fee determination shall include attorney fees as provided for under the Act.