Donnie **WEIL,** et ux.,
**Plaintiffs–Appellants,**

v.

**BOARD OF ELEMENTARY & SECONDARY EDUCATION,** et al.,
**Defendants–Appellees.**

No. 90–4438.

United States Court of Appeals,
Fifth Circuit.

May 28, 1991.

Leo J. Berggreen, Baton Rouge, La., for plaintiffs-appellants.

David E. Verlander, III, Ellen R. Eade, J. Allen Harvey, Jr., McLeod, Swearingen, Verlander, Dollar, Monroe, La., for Ouachita Parish School Bd.

Michael L. Hebert, Asst. Atty. Gen. of La., Dept. of Justice, Baton Rouge, La., for Board of Educ.

Before RUBIN, POLITZ and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

Donnie Weil and Kim Weil, individually and on behalf of their minor daughter Kimberly Day Weil, appeal the dismissal of their claims against the Ouachita Parish School Board ("OPSB") and the Louisiana Board of Elementary and Secondary Education ("BESE"). Finding neither error of fact nor law in the judgments rendered by the two district courts herein, we affirm.

## Background

Kimberly Day Weil is a severely mentally retarded child. This litigation involves her educational placement from August 1985 to February 1986 while she was within the jurisdiction of OPSB which, through the State of Louisiana, participated in the program established by the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1401, et seq. The EHA makes federal funding available to public schools for the education of handicapped children provided that the "State has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412. The EHA, its concomitant regulations, and the pertinent Louisiana statutes establish various substantive and procedural requirements designed to achieve this end.

The Weils were discontented with the educational program OPSB provided Kimberly, particularly her abrupt transfer, in August 1985, from the G.B. Cooley School to the Kiroli Elementary School. They voiced dissatisfaction with the quality of the educational program at Kiroli and withdrew their daughter from Kiroli, placing her in the Institute of Logopedics, a private residential facility.

The Weils first initiated an administrative claim, asserting that OPSB had failed to provide Kimberly with a free appropriate public education as required by EHA. Following an administrative hearing, the hearing officer ordered that the Weils should be reimbursed the cost of placing Kimberly in the Institute of Logopedics. The ruling, however, was in favor of OPSB as to future placement. Both parties appealed to BESE which reversed that portion of the administrative decision in favor of the Weils and affirmed the ruling in favor of OPSB.

The Weils filed the instant suit against BESE in the Middle District of Louisiana, the district of BESE's domicile, asserting claims under the EHA and 42 U.S.C. § 1983, maintaining, under the latter, that the BESE administrative review process denied them both substantive and procedural due process. They also sought judicial review of the administrative decision in favor of OPSB.

BESE successfully moved for dismissal of the claims against it, raising an eleventh amendment defense.[1] OPSB successfully sought a change of venue to the Western District of Louisiana, the district of its domicile. Following a bench trial, the district court in the Western District entered judgment in favor of OPSB. The Weils timely appealed the judgments of both the Middle and Western Districts.

## Analysis

On appeal the Weils raise many of the same issues presented to the two district courts. We endorse as our own the rulings of the two district courts on all of those issues. In addition the Weils raise an issue not presented to the trial courts, specifically the question of notice, contending that

---

1. The court found BESE, a state agency, was immune from the procedural due process claim brought under section 1983, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and from the substantive due process claim brought under the EHA because that act did not contain unequivocal language abrogating immunity as required by *Atascadero v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

OPSB failed to provide adequate notice of Kimberly's impending transfer from Cooley to Kiroli. We address that issue.

We do not find in this record an adequate explanation for the abrupt change from Cooley to Kiroli. We are informed only that the termination was for reasons beyond the control of OPSB. The Weils first became aware of this development when they heard a news report on television. Upon calling OPSB they were informed that Kimberly would be transferred from Cooley to Kiroli. There was no prior written notice before this was effected.

■ Both pertinent federal law and regulations require the public agency to notify the parents of a proposed change in the "educational placement" of their child. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 182, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690, 697 (1982); *Jackson v. Franklin County School Bd.*, 806 F.2d 623 (5th Cir.1986); 20 U.S.C. § 1415(b)(1)(C); La. R.S. 17:1952(B) (West 1982);[2] 34 C.F.R. § 300.504 (1990).[3]

■ We are not persuaded that the cited notice provisions were mandated in the instance of Kimberly's transfer from Cooley to Kiroli because that transfer did not constitute a change in "educational placement" within the meaning of 20 U.S.C. § 1415(b)(1)(C). The programs at both schools were under OPSB supervision, both provided substantially similar classes, and both implemented the same IEP for Kimberly. We conclude that the change of schools under the circumstances presented in this case was not a change in "educational placement" under section 1415. *Concerned Parents & Citizens for Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 754 (2d Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981) (holding that a transfer from one school to

another school within same school district with similar but less "innovative" programs was not a change in educational placement within the meaning of 20 U.S.C. § 1415 as the transfers did not affect the "general educational program in which a child ... is enrolled"); *Christopher P. v. Marcus*, 915 F.2d 794, 796 n. 1 (2d Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991) ("The regulations implementing the Act interpret the term 'placement' to mean only the child's general program of education."); *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C.Cir.1984) (noting that one "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change [in schools] to qualify as a change in educational placement"); *Tilton v. Jefferson County Bd. of Educ.*, 705 F.2d 800, 804 (6th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 998, 79 L.Ed.2d 231 (1984) (transfer from one school to another school with comparable program is not a change in educational placement). Therefore, we hold that OPSB was not required to provide the Weils with prior written notice of Kimberly's transfer under the particular facts of this case.

■ Even if the transfer from Cooley to Kiroli were deemed a change in "educational placement" sufficient to invoke the EHA's prior written notice requirement, we hold that OPSB's failure to give this notice in the instant case was not actionable. The purpose of prior notice in the context of a proposed change in educational placement is to inform the parents timely of the proposed change and of their right to request a hearing thereon. 20 U.S.C. § 1415(b)(1)(C) & (b)(2); 34 C.F.R. §§ 300.-505(a)(1), 300.506(a). If the parents request a hearing, "the child shall remain in the then current educational placement of

2. La.R.S. 17:1952 provides:
Safeguards to guarantee the rights of parents and exceptional children shall include the following: ... (3) Written prior notice to parents or guardians whenever a school district: (a) Proposes to initiate or change ... the identification, evaluation, or educational placement of the child....

3. 34 C.F.R. § 300.504 provides:
Written notice ... must be given to the parents ... a reasonable time before the public agency: (1) Proposes to initiate or change the identification, evaluation, or educational placement of the child....

such child" unless the parents and public agency agree otherwise. 20 U.S.C. § 1415(e)(3). However, if the change in "educational placement" is necessitated by the closure of a facility for reasons beyond the control of the public agency, the "stay-put" provisions of section 1415(e)(3) do not apply. *Tilton,* 705 F.2d at 804 (section 1415 stay-put provision not applicable when school is closed for budgetary reasons); *Knight v. District of Columbia,* 877 F.2d 1025, 1028 (D.C.Cir.1989) (section 1415 stay-put provision not applicable if student's "then current educational placement" becomes unavailable and public agency provides student with similar placement pending administrative review process).

As noted above, OPSB apparently was forced to make an abrupt termination of its program at Cooley for reasons beyond its control. Therefore, even if OPSB had sent the Weils prior written notice and the Weils had requested a hearing, nothing substantive could have resulted. Kimberly could not have remained at Cooley. The most that could have occurred would have been a discussion about the transfer's impact on Kimberly's IEP, a discussion which had to take place within 45 days of the request for a hearing. 34 C.F.R. § 300.512(a). In view of the fact that OPSB officials scheduled a meeting with the Weils within a few weeks after Kimberly's transfer to Kiroli, it is apparent that any injury to the Weils was *de minimus* and thus *damnum absque injuria.*

We caution that today's ruling is entirely mandated by the facts of this case and is not to be taken as an invitation or condonation of a failure of public officials to comply with the procedural safeguards prescribed by the EHA and resultant federal and state regulations.

The judgments appealed are AFFIRMED.