James B. GARDNER and Sally I. Gardner, Plaintiffs-Appellees,

v.

SCHOOL BOARD CADDO PARISH, Defendant-Appellant.

No. 91-4859

Summary Calendar.

United States Court of Appeals,

Fifth Circuit.

April 14, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Parents of a handicapped child seek to enjoin the enforcement of the local school board's policy that places limitations on tape recordings of parent/teacher conferences. The parents, seeking the unrestricted right to record, contend that their rights under the Individuals with Disabilities Act ("IDEA")[1] were violated by the policy. The school board moved to dismiss and for summary judgment on the grounds that, because the parents failed to exhaust administrative remedies, the district court did not have jurisdiction and, alternatively, that the school board had authority to enforce its policy. The plaintiffs also moved for summary judgment arguing that exhaustion was futile, and that they had the right to record a conference about their handicapped child.

The district court denied the school board's motions and

---

[1]20 U.S.C. §§ 1400 et seq.

granted the plaintiffs' motion for summary judgment.  The district court held that exhaustion was futile, that it had jurisdiction and that the parents had the right to record conferences.  We hold that the district court erred in not dismissing the case:  The plaintiffs did not exhaust their administrative remedies as required by the Act;  nor did they bear their burden of showing that exhaustion would be futile.  Thus, we vacate the order of the district court and dismiss the appeal.

I

James and Sally Gardner filed a complaint in federal district court against the Caddo Parish School Board seeking declaratory and injunctive relief.  They petitioned the court to declare the School Board's tape recording regulation illegal and unenforceable.  They also sought to enjoin enforcement of the policy.

The School Board moved to dismiss the case for lack of jurisdiction because the Gardners did not exhaust the administrative remedies and because they did not present a justiciable controversy.  Thereafter, both the Gardners and the School Board moved for summary judgment.

The district court granted the Gardners' motion for summary judgment and denied the School Board's motions.  The School Board appeals.

II

James and Sally Gardner have a daughter, Kelly, who is enrolled as a special education student at Byrd High School in Shreveport, Louisiana. Kelly is entitled to the protection and benefit of the IDEA. Under the Act, the School Board is required to give Kelly a free and appropriate public education designed to meet her unique needs through the formulation of an Individualized Education Program ("IEP"). The IEP is devised by the student's parent or guardian and the student's teacher or a representative of the local education agency.

An IEP consists of a written statement of the child's present education performances, establishes annual and short term instructional objectives, describes the special education services that will be provided to the child, and sets forth the criteria and procedures that will be used to evaluate whether these educational goals have been achieved. 20 U.S.C. § 1401(a)(19). The IDEA requires that the IEPs be developed during Planning and Placement Team meetings between school district representatives, teachers, parents, and when necessary, the student.

Under the Act, parents have the right to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, to receive prior written notice of administrative actions, and to present complaints. 20 U.S.C. § 1415(b)(1). When such complaints are made, the parents are entitled to an impartial due process hearing conducted by the local education agency. § 1415(b)(2). They can appeal the decision

rendered by the local education agency to the State agency. §
1415(c). If they are dissatisfied with the State agency's
decision, they can file a civil suit in state court or federal
district court. § 1415(e)(2).

On June 6, 1990, the School Board adopted a formal policy,
which regulates the recording of parent conferences. The policy
applies to all parent conferences, not just IEP conferences. As
originally adopted, the policy stated that recordings would be
permitted only when the parents and all other participants
consented. Prior to the initiation of this suit, however, an
amendment was proposed that allows recording if the authorities
determine that it is necessary to ensure that the parents fully
understand and can meaningfully participate in the IEP process.
The proposed amendment has since been adopted.

An IEP conference concerning Kelly was scheduled for November
16, 1990. Prior to the conference, the Gardners requested to have
the conference taped. The IEP director agreed to video tape, but
not audio tape, the conference if all participants consented. At
the time of the conference, one of the participants objected and
the Garners decided to proceed with the conference anyway.

About five months later, the Gardners wrote the School Board
expressing their view that the policy was illegal. Legal counsel
for the School Board rendered an opinion regarding the legality of
the policy which caused the Board to amend the policy. In June of

1991, the Gardners instituted this action claiming that the policy, including the proposed amendment, violated their rights under the Act.

### III

On appeal, the School Board contends that the district court did not have proper subject matter jurisdiction because the Gardners did not exhaust their administrative remedies as required by the Act and because they did not present a justiciable controversy.  Alternatively, the School Board argues that it has constitutional and statutory authority to establish and enforce the policy.  On the other hand, the Gardners contend that the district court did have subject matter jurisdiction.  Furthermore, they argue that the district court was correct in finding that the policy is contrary to Congress' intent to allow parents full participation in and understanding of the IEP process.

### IV

The School Board, in its motion to dismiss and its motion for summary judgment, asserted that the Gardners are required to exhaust their administrative remedies before instituting this action.  In examining the statute, we find initially that section 1415(b)(1)(E) guarantees parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Then, section 1415(b)(2) states that whenever the parents

file such a complaint, they are entitled to an impartial due process hearing conducted by the state or local educational agency. Next, section 1415(c) provides that if the hearing is conducted by a local educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency."  Finally, section 1415(e)(2) provides for a civil action:

> Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have a right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.  In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate.

Before initiating such civil action, however, section 1415(f) further makes clear that:

> before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsection (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Thus, it is beyond doubt that the statute provides that a plaintiff must first exhaust the state administrative remedies before bringing an action in federal court, if the complaint is one falling under § 1415(b)(1)(E), noted above.

The School Board thus argues that the Gardners complaint is

such a complaint "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education for such child," and that therefore, the Gardners were required to exhaust the administrative procedures discussed above. Indeed, although the Gardners contest this point, their argument is that it is necessary for them to tape the conference so that in the event they are dissatisfied with the IEP, they can use the tape of the conference when filing a complaint regarding the IEP. We therefore agree with the School Board that the Gardners' complaint is a complaint that falls within Section 1415(b)(1)(E), and as such, is a complaint that requires administrative exhaustion.

The Supreme Court, however, has recognized that although judicial review is not normally available until the administrative proceedings have been exhausted, "parents may by-pass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988). The district court held that because the Gardners were challenging the School Board's policy as a whole, exhaustion would be futile. We disagree.

The Gardners bear the burden of demonstrating the futility or inadequacy of administrative review. *Id.* 108 S.Ct. at 606. The Gardners, in response to the School Board's motion to dismiss and motion for summary judgment, argued that exhaustion would be futile because it was clear that the School Board was not going to change

its policy. The Gardners introduced affidavits in which members of the School Board stated the reasons for the policy. The Gardners also argued that they tried to negotiate with the School Board and the School Board refused. (The Gardners sent a letter to the Board stating that they thought the policy was illegal and Sally Gardner objected to the policy at an open School Board meeting).

Although the Gardners presented some evidence that filing a complaint at the local level may be futile because the School Board is the local educational agency, they have not even alleged that an appeal of the local agency's decision to the state administrative agency would also be futile. The Gardners therefore have failed to carry their burden of proving that exhaustion would be futile. *See Cox v. Jenkins,* 878 F.2d 414, 418–422 (D.C.Cir.1989); *Crocker v. Tennessee Secondary School Athletic Ass'n,* 873 F.2d 933, 937 (6th Cir.1989); *Browning v. Evans,* 700 F.Supp. 978, 979 (S.D.Ind.1988)).

V

Consequently, the district court should have granted the School Board's motion to dismiss or its motion for summary judgment on the grounds that the plaintiffs did not exhaust their administrative remedies or prove that exhaustion would be futile. We do not decide whether exhaustion is a jurisdictional requirement. Quite arguably, it is not because there is a judicial exception to exhaustion when exhaustion would be futile or inadequate. At any rate, a complaint based on § 1415(b)(1)(E) is

not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile or inadequate.  Accordingly, the order of the district court is

REVERSED and VACATED.