Andrew HILL, By and Through his
mother and next friend, Frances
HILL, Plaintiffs,

v.

SCHOOL BOARD FOR PINELLAS
COUNTY, State of Florida, and the
State of Florida Board of Education,
Defendants.

No. 96–2623–CIV–T–23A.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 4, 1997.

Laura Lee Whiteside, Laura L. Whiteside, P.A., Tampa, FL, for Andrew Hill, by and through his mother and next friend, Francis Hill.

Gregg D. Thomas, Toni L. Kemmerle, Lora Smeltzley, Elizabeth Belsom Johnson, Holland & Knight, Tampa, FL, John W. Bowen, Keith B. Martin, Pinellas County School Board, Largo, FL, for School Board for Pinellas County.

Joseph Hwan–Yul Lee, Henry A. Gill, Jr., Attorney General's Office, Department of Legal Affairs, Tampa, FL, for State of Florida Board of Education.

### ORDER

MERRYDAY, District Judge.

Before the Court is the plaintiffs' motion for temporary restraining order filed on January 2, 1997 (Doc. 2). Upon consideration, the motion is **DENIED**.

The "Individuals with Disabilities Education Act" (the "IDEA"), 20 U.S.C. § 1401, et seq., provides federal funding for states to help educate children with disabilities. To be eligible for federal assistance, a state's educational plan must contain policies that guarantee all children with disabilities the right to a "free appropriate public education." A "free appropriate public education" means that a state must develop an "Individualized Educational Program" ("IEP") for each child with disabilities. The IEP is prepared by school personnel with the input of the child's parents. The IDEA also requires the state to notify the child's parents when the state proposes to change the disabled child's "educational placement." *See* 20 U.S.C. § 1415(b)(1)(D) & (E). Complaints brought by a child's parents regarding any proposed changes to the child's educational placement shall be resolved at "an impartial due process hearing." A parent aggrieved by the administrative decision can bring a civil action in a federal district court.

Andrew Hill is an 18–year old high school student with specific learning disabilities and attention hyperactivity disorder. Being a child with disabilities as defined by the IDEA, Andrew is entitled to the protection of the act. Andrew resides with his mother in Safety Harbor, which is a residential area zoned for attendance at Countryside High School ("Countryside"). During the 1993–94 school year, Andrew attended Countryside and received the services articulated in his IEP. Because Andrew encountered a degree of difficulty adjusting to the students and faculty of Countryside, his mother requested from the Director of School Operations an administrative transfer for Andrew to Clearwater High School ("Clearwater"). Clearwater is outside Andrew's residential area. The Director of School Operations agreed to the transfer and issued an administrative placement for Andrew to attend Clearwater so long as he complied with several conditions. The placement required Andrew to maintain good conduct and attendance, to exhibit satisfactory effort in his classes, and to comply with the Code for Student Conduct. Andrew's IEP remained in effect.

Andrew attended Clearwater during the 1994–95 and 1995–96 school years. During the first semester of the 1995–96 school year, Andrew experienced academic difficulties and received sundry disciplinary referrals. Although his academic performance improved during the second semester of the 1995–96 school year, Andrew received six disciplinary referrals during that semester.

At that point, the Director of School Operations compiled a list of the students on administrative placement at Clearwater. The list, which included Andrew, was submitted to the Clearwater principal for his review and approval. The principal removed Andrew from administrative placement at Clearwater based on Andrew's purported failure to comply with the conditions of his administrative placement. As a result of the revocation of his administrative placement, Andrew was required to return to Countryside for the 1996–97 school year. The Director of School Operations notified Andrew's mother of the transfer.

Consequent upon her receipt of the notice, Andrew's mother lodged an administrative complaint alleging that Andrew's return to Countryside constituted a change in Andrew's educational placement and requested a due process hearing. She did not, however, request any changes in Andrew's IEP. On July 22, 1996, the School Board referred the matter to the Division of Administrative Hearings and moved to dismiss the complaint. During the pendency of the administrative proceedings, Andrew was allowed to remain at Clearwater. The Administrative Law Judge held hearings on September 11, 1996, and October 25, 1996. On November 21, 1996, the Administrative Law Judge issued his final order, holding that Andrew's transfer to Countryside was not a change in placement under the IDEA and granting the School Board's motion to dismiss. Aggrieved by the Administrative Law Judge's decision, the plaintiffs brought this action to challenge the final order.

The IDEA contains a "stay put" provision that allows a child with disabilities to remain in the same educational placement during the pendency of any proceedings pursuant to 20 U.S.C. § 1415. One of the proceedings contemplated by that section is a change in the child's educational placement. The plaintiffs (1) argue that Andrew's transfer constituted a change in his educational placement and (2) seek a temporary restraining order to enforce the "stay put" provision of the IDEA. The plaintiffs allege that the stay put provision of the IDEA mandating that the child remain in the "then current educational placement" during the pendency of the proceedings requires that Andrew remain in the same educational institution, i.e., Clearwater. I am forced reluctantly to disagree.

In the typical case, educational placement means a child's educational program and not the particular institution where that program is implemented. *See Weil v. Board of Elementary & Secondary Educ.,* 931 F.2d 1069 (5th Cir.1991), *cert. denied,* 502 U.S. 910, 112 S.Ct. 306, 116 L.Ed.2d 249 (1991); *see also Concerned Parents & Citizens for Continuing Education at Malcolm X (PS 79) v. New York City Bd. of Educ.,* 629 F.2d 751 (2d Cir.1980). Because his IEP did not change upon his transfer to Countryside, Andrew remains in the "then current educational placement" for the purposes of the IDEA and, therefore, no change in his educational placement occurred. (However, this Court does not dismiss as implausible the prospect of circumstances under which attributes of an institution, a location, a teacher-student relationship, or the like, might become so pronounced and valuable to the student and his or her IEP, that a change in the school is tantamount to a change in the IEP. However, this case presents no such circumstances. *School officials cannot casually dismiss the legitimate claims of disabled students, especially more youthful ones, because of administrative or budgetary, or other convenience or to acquit bureaucratic authority for its own sake. That will run afoul of the law.*)

The plaintiffs also argue that even if the IDEA does not require Andrew to remain at Clearwater during the pendency of this proceeding, Florida's plan for the education of handicapped children clearly does. Section 230.23(4)(m)5, Fla.Stat., provides that:

> [D]uring the pendency of any proceeding conducted pursuant to this section, unless the district school board and the parents or guardian otherwise agree, the child shall remain in his or her then current educational assignment.

The plaintiffs claim that this section provides Andrew with protection not otherwise provided by the IDEA. The plaintiffs contend that by using the term "educational assignment"

and not "educational placement" the Florida Legislature meant to distinguish one from the other. The plaintiffs cite no authority to support this contention.[1] As discussed above, the plaintiffs do not challenge Andrew's IEP. In fact, during her testimony at the administrative hearing Andrew's mother admitted that her objections to the transfer were unrelated to Andrew's IEP. Unfortunately for Andrew's mother, Florida courts hold that children in Florida "do not have a right to be seated at a particular desk in a particular room at a particular school." *School Bd. Of Orange County v. Blackford,* 369 So.2d 689 (Fla. 1st DCA 1979).

Because Andrew's "educational placement" remains unchanged, the plaintiffs have failed to establish a substantial likelihood that they will succeed on the merits of their case. Accordingly, although Andrew's school attendance is not a matter that causes any undue public injury or any private injury to any disinterested party, and although Andrew enjoys no adequate remedy at law, the plaintiffs fail to adequately meet the prerequisites for issuance of a temporary restraining order. (I am mindful of the shift in educational authority that would occur if a student, notwithstanding palpable weakness on the merits of a claim, could remain at a personally selected or favorite facility while a case found its way through the court system.)

---

**1.** The Florida Statute is patterned after the IDEA and should be construed consistently. However, precedent is thin. One court has used the term "educational assignment" *en passant* to mean educational programs. *Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania,* 334 F.Supp. 1257, 1266 (E.D.Pa.1971).