IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50491

_____


MARLENE H, as next friend ANDREW H


                          Plaintiff - Appellant

     v.

YSLETA INDEPENDENT SCHOOL DISTRICT; RAMON RIVERA; EDWARD LEE
VARGAS


                          Defendants - Appellees

_____

           Appeal from the United States District Court
              for the Western District of Texas
                    No. EP-00-CA-279-H
_____

                       April 3, 2002


Before KING, Chief Judge, and HIGGINBOTHAM and EMILIO M. GARZA,
Circuit Judges.

PER CURIAM:[*]

     In this action, Plaintiff-Appellant Marlene H. alleges

violations of the Rehabilitation Act of 1973, the Americans with

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Disabilities Act of 1990, and the Due Process and Equal Protection clauses of the United States Constitution by Defendants-Appellees Ysleta Independent School District, Principal Ramon Rivera, and Superintendent Edward Lee Vargas, based on the Defendants-Appellees' refusal to re-enroll Marlene H.'s learning disabled son in Eastwood Knolls School. The district court granted summary judgment in favor of all defendants and dismissed the action because Marlene H. failed to exhaust administrative remedies prior to filing her federal law claims, as is required by the Individuals With Disabilities Education Act. For the following reasons, we AFFIRM.

## I.   FACTUAL AND PROCEDURAL HISTORY

Andrew H. ("Andrew") lives with his parents, including his mother Plaintiff-Appellant Marlene H. ("Marlene"), in the Socorro Independent School District. In July 1999, Marlene transferred Andrew to Eastwood Knolls School ("Eastwood") in the Ysleta Independent School District (the "YISD"). In January 2000, Eastwood determined that Andrew has a learning disability, and Eastwood's Admission, Review and Dismissal Committee (the "ARD Committee") subsequently developed a special Individualized Educational Plan ("IEP") for Andrew. In March 2000, Andrew's parents objected in writing to the IEP and notified the ARD Committee that they planned to enroll Andrew in a private school at the YISD's expense. The YISD refused to pay for private

2

education for Andrew.  Andrew's parents then withdrew their objection to the IEP, and Andrew remained enrolled at Eastwood. Eastwood claims that in March 2000, it mailed an "Out of Attendance Area Transfer Letter of Intent" (the "Letter of Intent") to Andrew's parents.  Andrew's parents were required to complete and return the Letter of Intent in order to secure enrollment for Andrew at Eastwood for the 2000-01 school year, pursuant to the YISD's open enrollment policy applicable to out-of-district transfer students.[1]  Eastwood additionally claims that Andrew was given a pre-registration packet with instructions to return the form included therein to the school.  Eastwood further claims that an Eastwood assistant principal and a school counselor reminded Andrew at the time he received the pre-registration packet of the importance of the timely return of the pre-registration form and that daily announcements were made to students to remind them to return the form.  Eastwood never received any Letter of Intent or pre-registration form completed by Andrew's parents.  Marlene claims she did not complete and return the Letter of Intent or the pre-registration form because she never received either.

In April of 2000, the ARD Committee, including Defendant-Appellee Principal Ramon Rivera, met with Andrew's parents to

---

[1]  The YISD open enrollment transfer policy states: "No later than May 10 of each year, an out-of-attendance area transfer student will declare in writing his/her intention to re-enroll at the same campus for the next school year."

discuss Andrew's IEP and his progress. At this time, Andrew's IEP included a curriculum plan for the 2000-01 school year at Eastwood. The IEP also required Andrew to complete a YISD summer program, but not at Eastwood. Andrew attended that summer program in June and July of 2000. On June 12, the ARD Committee again met with Andrew's parents to discuss the IEP, which still contained a curriculum for 2000-01 at Eastwood. Andrew's parents' failure to return the Letter of Intent and the pre-registration form was not discussed at these meetings.

On June 16, Eastwood's 2000-01 eighth grade enrollment reached its maximum. According to YISD, Andrew was thus effectively closed out of enrollment at Eastwood because the school never received the Letter of Intent that would have secured his position as an out-of-district student. On July 26, Andrew's grandmother took Andrew to Eastwood to pre-register and was told by school officials that Andrew could not attend Eastwood. On August 11, Principal Rivera notified Andrew's parents in writing that Andrew could not attend Eastwood for 2000-01. Andrew's parents then placed him in private school but still seek his enrollment at Eastwood.

On September 14, 2000, Marlene filed this suit in federal district court against YISD, Rivera, and Defendant-Appellee Superintendent Edward Lee Vargas (collectively, the "School

4

District").[2]  Marlene alleges that the School District violated

(1) Section 504 of the Rehabilitation Act of 1973 (the

"Rehabilitation Act"), 29 U.S.C.A. §§ 791-794 (West 1999); (2)

the Americans with Disabilities Act of 1990 (the "ADA"), 42

U.S.C.A. §§ 12131-34 (West 1999); and (3) Andrew's due process

and equal protection rights under the Fourteenth Amendment to the

United States Constitution.  On March 15, 2001, the School

District filed a motion for summary judgment asserting that: (1)

Marlene failed to exhaust her administrative remedies prior to

filing this suit, as is required by the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1415 (West

1999); and (2) the School District did not violate Andrew's

constitutional or statutory rights as a matter of law.  On May 2,

2001, the district court granted summary judgment in favor of the

School District on the sole ground that Marlene failed to exhaust

her administrative remedies.  Marlene timely appeals the district

court's summary judgment.

## II. STANDARD OF REVIEW

We review summary judgment de novo, applying the same

standards as the district court.  See, e.g., Commerce & Indus.

Ins. Co. v. Grinnel Corp., 280 F.3d 566, 570 (5th Cir. 2001).

---

[2]  Although Marlene has sued Rivera and Vargas in their individual capacities, neither Marlene nor any of the defendants makes any argument on appeal that revolves around that fact and we, thus, treat them collectively along with YISD without, however, intending to suggest that there are no differences in their legal positions.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Once the movant shows that no genuine issue of material fact exists, the non-movant may not rest on mere allegations and denials, but must set forth specific facts to establish a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

### III.  DISCUSSION

Subsections (f) and (g) of Section 1415 of the IDEA outline administrative procedures for the review and appeal of decisions regarding the public education of disabled children.  These procedures are designed to ensure that "children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education" by "State educational agenc[ies], State agenc[ies, and] local educational agenc[ies]" that receive federal assistance under the IDEA.  20 U.S.C.A. § 1415 (a), (f)-(g).  Subsection (l) of Section 1415 of the IDEA requires that, before any civil suit can be filed against state educational agencies that receive funds under the IDEA claiming that an educational decision regarding a disabled child violates federal law, the plaintiff ordinarily first must exhaust all administrative remedies available under subsections (f) and (g).

See id. at § 1415 (l).[3]   It is undisputed that Marlene never requested any administrative review of the decision of YISD not to re-enroll Andrew.  She did not, for example, request an administrative hearing.

Marlene contends, alternatively, that exhaustion is not required or, if required, would be "futile" and inadequate in her case because: (1) her challenge does not concern an issue governed by the IDEA because she does not challenge an "educational placement" within the meaning of the act; (2) she seeks retrospective compensatory money damages, a form of relief not available under the IDEA; and (3) no administrative officer has authority to remedy her claim by enrolling Andrew within a non-resident district such as YISD.

This court has not squarely confronted the issues and arguments raised by Marlene's claim.  However, examination of decisions of our sister circuits considering the applicability of

---

[3]  Section 1415(l) reads in relevant part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA] ..., the [Rehabilitation Act] ..., or other Federal Laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415 (l).

7

the IDEA exhaustion requirement indicates that Marlene's claim is of the type suited to administrative review prior to court intervention and that such review would not be futile or inadequate for the purposes of exhaustion.

The parties first dispute whether Marlene's claim is directed toward a change by the School District in Andrew's "educational placement" within the meaning of the IDEA. Marlene argues that she challenges either an "expulsion" of Andrew or an improper failure to re-enroll him by the School District, actions which she claims are not "educational placement" decisions. Marlene thus claims that she is not seeking redress under federal law that "is also available under [the IDEA]" pursuant to subsection (l). Marlene claims, therefore, that subsection (l)'s exhaustion requirement does not apply to her claim. No court has addressed this exact argument in the context of determining whether dismissal of a federal law claim for failure to exhaust administrative remedies is appropriate. However, what case law there is indicates that Marlene's claim fits comfortably within the purview of the IDEA for the purposes of the exhaustion requirement.

Subsection (b)(6) of Section 1415 focuses on protecting the right of parents of disabled children to "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to

8

such child." 20 U.S.C.A. § 1415 (b)(6) (emphasis added). The decisions on which Marlene relies in support of her argument that the School District's refusal to re-enroll Andrew does not fall within this ambit, however, deal with whether a challenged decision affects the "educational placement" of the student in the context of determining whether IDEA requirements other than exhaustion apply. Those decisions involve challenges regarding the IDEA's notice requirement, 20 U.S.C.A. § 1415 (b), or the so-called stay-put provision, 20 U.S.C.A. § 1415(j), which requires that an institution maintain the current educational placement of the student during the pendency of any administrative challenge to a decision affecting the student. See Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook County, Ill. v. Ill. State Bd. of Educ., 103 F.3d 545, 549 (7th Cir. 1996) (finding that a disabled student's expulsion and successive transfers constituted sufficient change in "educational placement" to invoke the IDEA's stay-put provision, but that the various schools implemented the student's IEP sufficiently to satisfy the student's educational "status quo" for the purposes of that IDEA requirement); Weil v. Bd. of Elementary & Secondary Educ., 931 F.2d 1069, 1072 (5th Cir. 1991) (finding that a transfer of a student for reasons beyond the control of the institution did not constitute an "educational placement" within the meaning of subsection (l) sufficient to trigger the IDEA's requirement of prior notice to

9

parents); <u>Lunceford v. Dist. of Columbia Bd. of Educ.</u>, 745 F.2d 1577, 1582-83 (D.C. Cir. 1984) (finding that the discharge of a disabled student from a hospital that provided educational services did not constitute a change in educational placement sufficient to invoke the stay-put requirement so that the applicable school district was not required to house the student at the hospital or any equivalent facility during the pendency of any administrative challenge by the parents to the discharge).[4] Within those limited contexts, such decisions have defined a change in "educational placement" as "'at a minimum, a fundamental change in, or elimination of a basic element of the education program ....'" <u>See, e.g.</u>, <u>Weil</u>, 931 F.2d at 1072 (quoting <u>Lunceford</u>, 745 F.2d at 1582)).

Marlene's appeal, however, concerns the discrete issue of whether the IDEA's exhaustion requirement applies, not the stay-put or notice requirements. Marlene's characterization of the School District's refusal to re-enroll Andrew as an "expulsion," or as a decision not affecting his "educational placement," is thus not dispositive of the question whether Marlene must first

---

[4] Some of the decisions cited in this opinion and relied upon by the parties, including <u>Lunceford</u>, were decided under the IDEA's predecessor, the former Education of the Handicapped Act (the "EHA"), 20 U.S.C. § 1400 <u>et</u> <u>seq</u>. However, courts employ decisions rendered under the EHA and IDEA interchangeably. <u>See, e.g.</u>, <u>Babicz v. Sch. Bd. of Broward County</u>, 135 F.3d 1420, 1422 & n.10 (11th Cir. 1998).

10

exhaust administrative remedies before turning to court intervention.

In those decisions by our sister circuits squarely addressing the applicability of the IDEA exhaustion requirement, such courts of appeals do not focus on whether a given decision constitutes a change in a disabled student's "educational placement" per se.  Rather, those circuits have interpreted the IDEA's exhaustion requirement to apply to a broad range of claims that even arguably might be redressed by the IDEA's administrative procedures and remedies and, thus, to include more claims, for example, than those to which the stay-put clause might apply.  See Hayes v. Unified Sch. Dist. No. 377, 877 F.2d 809, 813 (10th Cir. 1989) (holding that "[t]he fact that [a given institutional decision] do[es] not constitute a change in placement within the meaning of [the IDEA] ... does not remove the action from the purview of the Act" for the purposes of its administrative exhaustion requirement); see also Padilla v. Sch. Dist. No. 1 in the City & County of Denver, Colo., 233 F.3d 1268, 1274 (10th Cir. 2000).  As the Tenth Circuit explained in Padilla:

> In essence, the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required.  If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary.  Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.

11

233 F.3d at 1274 (citing <u>Charlie F. v. Bd. of Educ.</u>, 98 F.3d 989, 992, 993 (7th Cir. 1996)).  <u>Cf.</u> <u>Babicz v. Sch. Bd. of Broward County</u>, 135 F.3d 1420, 1422 (11th Cir. 1998) (finding that "claims asserted under Section 504 [of the Rehabilitation Act] and/or the ADA are subject to [the] requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit").

In <u>Hayes</u>, for example, a school used a "time-out" room to discipline two disabled students, and their parents filed suit in federal court alleging constitutional violations without first requesting any administrative hearing on the matter.  877 F.2d at 811.  That court of appeals noted that states and school districts receiving federal funds are, under the IDEA, "required to conduct 'an impartial due process hearing'" for parental complaints on "'<u>any matter relating to</u> ... the provision of a free appropriate public education.'"  <u>Id.</u> at 813 (emphasis in original) (quoting 20 U.S.C.A. § 1415 (b)(1)(E)).  The court of appeals agreed with the district court's explicit finding in that case that the minor disciplinary action of a time-out "did <u>not</u> constitute a 'change in placement' within the meaning of the [IDEA]."  <u>Id.</u> (emphasis added).  The court of appeals reasoned, however, that because the state and the school district were nevertheless required to conduct, and parents were entitled to request, a hearing on challenges to such minor disciplinary action, the parents should first turn to administrative remedies

12

and expertise prior to seeking court intervention.  Id.  In so doing, the court noted the close nexus between discipline of children and in-class instruction "in providing a child with a 'free appropriate public education'" so that such disciplinary actions are those "relate[d] to the public education of a handicapped child[,]" and parental challenges to them "therefore fall[] within the scope of the [IDEA]" for the purposes of exhaustion.  Id.  The court thus found that the parents were required to "present their complaints concerning such disciplinary action according to the procedures set forth by the Act, whether or not they bring additional causes of action 'under the Constitution, ... the Rehabilitation Act of 1973, or other federal statutes ....'"  Id. (quoting 20 U.S.C.A. § 1415(f)).

In so ruling, the Hayes court relied on the purpose underlying the IDEA's exhaustion requirement for additional support, quoting the Eleventh Circuit:

> "The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the courts to challenge the actions of the local school authorities.  This exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency first opportunity to correct any error."

13

<u>Id.</u> at 814 (quoting <u>Ass'n for Retarded Citizens, Inc. v. Teague</u>, 830 F.2d 158, 160 (11th Cir. 1987)); <u>see also</u> <u>Heldman v. Sobol</u>, 962 F.2d 148, 159 (2d Cir. 1992) ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.") (citing <u>McKart v. United States</u>, 395 U.S. 185, 193-95 (1969)) (citations omitted).  We find the Tenth Circuit's approach in <u>Hayes</u> and <u>Padilla</u> persuasive.  We note that such approach is not based on the perceived ultimate outcome of the review or whether the parents may eventually seek court redress for any perceived failures of the administrative process.  Rather this approach focuses on whether it is appropriate that the administrative machinery be given a chance to work without court interference and to prevent unnecessary court adjudication of any portion of the claim.  We thus find that even more than the challenge to the minor time-out disciplinary action at issue in <u>Hayes</u>, Marlene's challenge to the non-enrollment of Andrew in a public school bears sufficiently close nexus to provision of his free and appropriate education to warrant allowing school administration a chance to review and attempt to remedy her complaint prior to court intervention.

Marlene is correct, however, that even where a matter, such as the YISD's refusal to re-enroll Andrew, appears to be within the ambit of the IDEA exhaustion requirement, such exhaustion may nevertheless be excused where it would prove "futile or

14

inadequate" (referred to commonly as the "futility exception").[5]

See, e.g., Gardner v. Sch. Bd. Caddo Parish, 958 F.2d 108, 112

(5th Cir. 1992) (recognizing the futility exception in context of

a challenge to limitations placed on the tape recording of

parent-teacher conferences, but refusing to excuse exhaustion

where the plaintiffs failed to allege futility); see also Hayes,

877 F.2d at 814 (same).  Courts of appeals have interpreted the

futility exception narrowly, however, thus far recognizing

futility in only two circumstances.

First, courts of appeals have recognized futility when a

plaintiff alleges that the particular administration to which she

would turn is so "systemically" flawed that review is rendered

wholly futile or inadequate.  Compare Heldman, 962 F.2d at 159

(finding that a plaintiff who claimed that a New York state

statute "specifying the hearing officer selection procedure

violates the [IDEA] mandate" need not exhaust administrative

---

[5]  We note that courts inconsistently approach arguments regarding exhaustion, such as arguments that administration has a lack of authority to remedy or that monetary damages render exhaustion unnecessary, via analysis under the rubric of either whether a given claim falls within the scope of the IDEA or comes within the futility exception.  Compare Padilla, 233 F.3d at 1274 (analyzing whether a claim for money damages renders exhaustion unnecessary as an argument whether the IDEA is at all applicable, but not as a futility argument), with Covington v. Knox County Sch. Sys., 205 F.3d 912, 918 (6th Cir. 2000) (analyzing an argument against exhaustion based on a claim for money damages as a futility argument).  Regardless of the characterization of such arguments, the IDEA exhaustion jurisprudence persuades us that Marlene's arguments that she need not exhaust administrative remedies fail.

15

remedies because to "require a systemic challenge, such as [the plaintiff's], to pursue administrative remedies would not further the purposes of IDEA and would only serve to insulate the state procedures from review - an outcome that would undermine the system Congress selected for the protection of the rights of children with disabilities"); Mrs. W. v. Tirozzi, 832 F.2d 748, 757 (2d Cir. 1987) (finding that it would be futile for class plaintiffs to exhaust administrative remedies under the IDEA based on plaintiffs' prior attempts to complain to a school board about that board's failure to provide adequate psychological assistance and evaluation to their disabled children, as well as based on plaintiffs' claims that the board also failed to provide parents with adequate hearings on that issue, and thus finding that "[the class] complaint alleges a pattern and practice of systematic [IDEA] violations unable to be addressed at the due process hearings provided in the [state]" and that a state hearing officer lacked authority to provide "class action and systemwide relief"), with, e.g., Doe v. Ariz. Dep't of Educ., 111 F.3d 678, 682-83 (9th Cir. 1997) (relying on decisions from the Second, Third, and Tenth Circuits and finding that claims of "neglect of children at a single [prison] facility," which housed some juvenile disabled inmates, required exhaustion under the IDEA because the violation "does not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis") (internal quotation and citation omitted).

16

As the Ninth Circuit explained in <u>Arizona Department of</u>
<u>Education</u>,

> it appears that a claim is "systemic" if it implicates
> the integrity or reliability of the IDEA dispute
> resolution procedures themselves or requires
> restructuring the education system itself in order to
> comply with the dictates of the Act; but that it is not
> "systemic" if it involves only a substantive claim
> having to do with limited components of a program, and
> if the administrative process is capable of correcting
> the problem.

<u>Id.</u> at 682. Marlene makes no challenge to the integrity or
reliability of the entire available state administrative review
process, none that indicates required restructuring of the system
to comply with the dictates of the IDEA, or for which exhaustion
would undermine Congressional purpose in enacting the IDEA.
Thus, Marlene's claims fail to evince systemic futility.

The second instance in which courts have recognized futility
occurs when a plaintiff claims an injury for which retrospective
monetary compensation is the only apparent appropriate remedy
because the separate educational issue component of the claim is
already determined, settled or somehow mooted. <u>Compare</u> <u>Covington</u>
<u>v. Knox County Sch. Sys.</u>, 205 F.3d 912, 917-18 (6th Cir. 2000)
(agreeing with "those courts that have decided that a mere claim
for money damages is not sufficient to render exhaustion ...
unnecessary," but holding "in the unique circumstances of this
case - in which the injured child has already graduated from the
special education school, his injuries are wholly in the past,
and therefore money damages are the only remedy," and "there is

17

no equitable relief that would make [the student] whole," so that exhaustion would be "futile" and thus was not required); <u>Witte v. Clark County Sch. Dist.</u>, 197 F.3d 1271, 1275-76 (9th Cir. 1999) (finding exhaustion unnecessary because a plaintiff sought only "retrospective" money damages and no costs for "remedial services" on behalf of a disabled student claiming psychological and physical abuse by staff at one school, after the student moved to another school within the district at which the student was satisfied, "because all educational issues already have been resolved to the parties' mutual satisfaction through the IEP process"); <u>W.B. v. Matula</u>, 67 F.3d 484, 495-96 (3d Cir. 1995) (finding that exhaustion would be "futile, perhaps even impossible" when parents filed a § 1983 action seeking money damages for constitutional violations due to a school's repeated refusal to evaluate and classify a child as disabled because, after extensive administrative proceedings, the school board and the parents entered into a binding settlement that the child would be classified as impaired so that the issue of the student's classification and placement had been resolved and the only remaining issue was monetary damages for the past injury), with <u>Charlie F.</u>, 98 F.3d at 991-92 (requiring exhaustion of administrative remedies because, although a plaintiff requested only monetary damages for claims that a teacher encouraged fellow students to verbally humiliate the student leading to physical altercations, and although the student had since moved to a new

18

school at which he was satisfied, the "educational professionals and hearing officers who evaluate claims under the IDEA" might nevertheless conclude that the disabled student could be provided "remedial services" to treat the past humiliation so that "pursuit of the administrative process would be justified"). In W.B., the Third Circuit further explained that this type of futility is generally recognized due to past injury that appears likely redressable solely by monetary compensation:

> There may be other very narrow exceptions permitting the exhaustion requirement to be waived before filing a [federal] claim, such as where the parents of a deceased child seek damages for a school board's failure to provide IDEA services while the child was still alive. Such exceptions, whether based on futility or other grounds, would be rare indeed.

67 F.3d at 496. When read together, these decisions indicate that regardless of whether a plaintiff claims monetary compensation for injury to a disabled child, where an educational issue of the case that has any possibility of redress by administrative procedures remains unresolved, excuse from exhaustion is not appropriate. The mere presence of a claim of monetary compensation will not render a claim incapable of redress by an administrative body under the IDEA. See, e.g., Covington, 205 F.3d at 917.

In the instant case, it is undisputed that, although Marlene claims "compensatory damages," she also prays for relief in the form of "a permanent injunction prohibiting the defendants from

19

excluding plaintiff from attendance at Eastwood Knolls School," as well as "such other and further relief as the court may deem just, proper and appropriate." Thus, Marlene's own request for relief asks for prospective equitable relief to remedy the School District's non-enrollment of Andrew. That educational issue remains unresolved in this case, and Marlene made no prior attempt whatsoever at administrative redress. Consequently, in accord with the persuasive reasoning of our sister circuits, we find that Marlene's claim is not of the type that warrants excuse of administrative exhaustion based on her claim for compensatory money damages.

Marlene's final claim - that administrative review would prove inadequate because she alleges that a hearing officer lacks authority to reinstate Andrew within the YISD - is likewise unavailing. Marlene relies upon a single decision by a district court to support this proposition, <u>Padilla v. Sch. Dist. No. 1 in the City & County of Denver, Colo.</u>, 35 F. Supp. 2d 1260, 1265-66 (D. Colo. 1999). In <u>Padilla</u>, a parent filed claims under § 1983 and the ADA on behalf of her handicapped child against a defendant school district in which the student no longer resided. <u>Id.</u> at 1264. It is true that in <u>Padilla</u>, based on a school district's refusal to grant a hearing to the parent after the student relocated to another district, the district court excused the plaintiff from exhaustion of administrative remedies and denied dismissal of the federal law claims, reasoning that at the

20

time of the requested hearing, "the hearing officer lacked authority to grant relief." Id. at 1266.[6]  However, one of our sister circuits has explicitly rejected this argument that non-residence within a school district constitutes sufficient grounds alone to excuse exhaustion of administrative remedies.  See N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996) (requiring exhaustion and rejecting the argument that because a student "no longer attends any of the defendant school districts" such exhaustion would prove futile).  In N.B, the Eleventh Circuit reasoned that

> [i]f parents can bypass the exhaustion requirement of
> the IDEA by merely moving their child out of the
> defendant school district, the whole administrative
> scheme established by the IDEA would be rendered
> nugatory.  Permitting parents to avoid the requirements
> of the IDEA through such a "back door" would not be
> consistent with the legislative intent of the IDEA.

Id.  We find this reasoning persuasive and in no way diminished simply because Andrew, as a transfer student to Eastwood, was not

---

[6]  The Tenth Circuit subsequently reversed the district court's judgment as to the § 1983 claim and thus dismissed that claim, but on a different ground than exhaustion.  Padilla, 233 F.3d at 1274.  The court of appeals affirmed the district court's judgment denying dismissal of the ADA claim and found that the plaintiff need not administratively exhaust as to that claim, but likewise based its decision on a different rationale than that of the district court.  See id. at 1274-75.  At a minimum, in not analyzing or relying on the district court's rationale, the Tenth Circuit failed to endorse the district court's reasoning that a student's non-residency within a district constitutes sufficient grounds alone to excuse exhaustion of administrative remedies.

21

<u>removed</u> from the YISD by his parents, but <u>already resides</u> outside of the YISD.

Moreover, Marlene merely asserts in conclusory fashion that a hearing officer lacks authority to provide any appropriate remedy for Andrew's circumstance, including reinstatement within the YISD.[7]  As the Seventh Circuit stated in <u>Charlie F.</u>, it is not the specific relief which the plaintiff requests that is the gravaman of the inquiry into whether exhaustion is appropriate, but rather the "<u>available</u> relief" of which the IDEA speaks.  98 F.3d at 991-92 (emphasis added).  <u>See also</u> <u>Padilla</u>, 233 F.3d at 1274 ("Like the Seventh Circuit, we understand 'available' relief to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers ... or specifically seeks.") (internal citation and quotation omitted).  Thus, if there appears any arguable likelihood that the administrative process might provide any form of equitable, remedial relief to Andrew, then this court must not interfere so as not to frustrate Congressional purpose in enacting the IDEA.  <u>See, e.g.</u>, <u>Charlie F.</u>, 98 F.3d at 991-92.

---

[7]  Marlene relies on Section 25.036 of the Texas Education Code to make this argument.  This section only requires, however, that for proper transfer of a student into a non-resident school district, the parent and the district must "jointly approve and timely agree in writing to the transfer" and that such written agreement be filed with the applicable district.  TEX. EDUC. CODE ANN. § 25.036 (Vernon 1996).  Nothing in this section precludes, therefore, the possibility that the School District and Marlene might now agree in writing to enrollment of Andrew at a school within the YISD, or even at Eastwood.

Marlene bears the burden of showing that exhaustion would be futile or inadequate.  Gardner, 958 F.2d at 112 (citing Honig v. Doe, 484 U.S. 305, 327 (1988)).  As the district court correctly noted, even assuming that a hearing officer could not reinstate Andrew to Eastwood, or even to another school within the YISD, Marlene has not pointed to facts that, if proven true at trial, indicate that an administrative hearing officer lacks authority to review Andrew's circumstance and to provide any form of relief regarding his enrollment in an appropriate educational situation.  As the Sixth Circuit stated in Covington, "a more appropriate educational placement, provided at public expense - is precisely the kind of relief that the state administrative process is equipped to afford."  205 F.3d at 918 (citing Doe v. Smith, 879 F.2d 1340, 1341-42 (6th Cir. 1989)).  Consequently, Marlene offers no compelling grounds for excusing her from exhaustion of administrative remedies prior to seeking court intervention.  We decline, therefore, to interfere with the School District's opportunity to administratively redress Marlene's claims regarding Andrew's prospective educational enrollment via proper procedures in comportment with the IDEA.[8]

## IV. CONCLUSION

---

[8]  Because we agree with the district court that Marlene must exhaust administrative remedies before turning to federal court, we likewise decline to address any arguments regarding the substance of Marlene's federal claims under the Rehabilitation Act, the ADA, or the Constitution.

23

The district court's summary judgment in favor of the School District dismissing Marlene's claims under federal law for failure to exhaust administrative remedies is AFFIRMED.